Jonathan LITTLE and Hanna Little,
Plaintiffs and Respondents,

v.

UTAH STATE DIVISION OF FAMILY
SERVICES, Defendant and Appellant.

No. 18113.

Supreme Court of Utah.

July 1, 1983.

David L. Wilkinson, Atty. Gen., Sharon Peacock, Craig L. Barlow, Asst. Attys. Gen., Salt Lake City, for defendant and appellant.

David E. Littlefield of Littlefield, Cook & Peterson, Salt Lake City, for plaintiffs and respondents.

HOWE, Justice:

The State appeals from a judgment in favor of the plaintiffs awarding them damages for the wrongful death of their infant daughter.

On March 16, 1977, a warrant and order of temporary placement directed to Jennifer Little, 2½ year old daughter of plaintiffs, was issued by the juvenile court as the result of a petition filed by the Utah Division of Family Services (hereinafter Family Services or State). The juvenile court made the following findings:

Said child is dependent through no fault of the parents in that (1) said minor has not developed properly and manifests autistic behavior; (2) said minor is in need of specialized assistance which the parents are emotionally unable to provide.

Family Services obtained custody and guardianship of Jennifer and placed her

with therapeutic foster parents for handicapped children and children with special problems. Arrangements were made for medical and psychological treatment to begin at some future date as openings became available. Shortly after placement, the foster mother noticed that Jennifer would periodically bang her head against the floor, furniture and walls and pull out hair from her scalp. She notified the Family Services case worker of this behavior and attempted to shield Jennifer from injury by holding her until she stopped and by keeping her away from sharp objects as much as she could. She was told by the case worker that Jennifer definitely had problems but was never given any explanation of her autism nor instructions on remedying her behavior. No medication was prescribed and no physical shield was provided to protect the child against injury. Jennifer manifested facial bruises which were brought to the attention of the case worker by both her foster mother and Mrs. Little, her mother. Mrs. Little was told that it was natural for children to bruise. The Orientation To Therapeutic Child Care, a workbook for child care parents distributed by Family Services to the foster parents, contained a short paragraph on autism but made no reference to head banging and other acts of self-mutilation. Family Services expected the foster parents to monitor and report unusual behavior, but provided no specific instructions.

Jennifer died on June 4, 1977 of a massive hemorrhage of the right half of the brain. A post mortem examination revealed symptoms resembling the battered child syndrome. The exterior autopsy disclosed that her body was covered with bruises suffered at intervals. An interior examination revealed areas of hemorrhage scattered from the forehead to the parietal region, again of varying colorations, ergo of different ages. The medical expert concluded that the aggregate trauma sustained by Jennifer over an extended period of time was a significant contributing factor to the child's death. He was unable to attribute death to a single incident, as he could not ignore the fact "that there were various areas of injury on the same area of the body, and various stages of healing and various intensities." A police report made on the day of Jennifer's death divulged that the child was left for several hours with another foster child, a mildly retarded boy of 17 years of age, who apparently slapped her in the face when she fussed about going to the bathroom. Testimony revealed that the boy was a trusted babysitter with neighbors and had no history of aggressive behavior. No charges were ever preferred against him.

Plaintiffs filed suit against Family Services alleging its negligent conduct culminated in the death of their daughter. The lower court found that Family Services had owed Jennifer a duty of protection, that that duty had been breached, and that her death was proximately caused by the negligent conduct of Family Services. Judgment was entered in favor of the Littles for $20,000 damages plus funeral expenses and costs.

The State bases its claim for reversal of the judgment on (1) the Utah Governmental Immunity Act under the two alternate theories that Family Services was immune from suit for injuries which resulted (a) from its exercise of a governmental function, or (b) from its performance of, or its failure to perform, a discretionary function; (2) erroneously admitted testimony of plaintiffs' expert witness; and (3) an erroneous finding that Family Services was negligent, and that negligence was the proximate cause of the death of Jennifer Little. We address those issues in their order.

## GOVERNMENTAL IMMUNITY

Under the Utah Governmental Immunity Act, U.C.A., 1953, § 63–30–1, et seq.:

[e]xcept as may be otherwise provided in this act, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function, governmentally-owned hospital, nursing home, or other governmental health care facility, and from an approved medical, nursing, or other profes-

sional health care clinical training program conducted in either public or private facilities.

The plaintiffs and the State are in sharp disagreement whether Family Services' Foster Care Program is a governmental function. It is unnecessary for us to here decide that question. For the purposes of this case we will assume that it is a governmental function and proceed to determine whether that immunity has been waived by the Act. Section 63–30–10 provides:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury:

(1) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused, or

\* \* \* \* \* \*

The State contends that the death of Jennifer arose out of its failure to perform a discretionary function and that its immunity has therefore not been waived. We cannot agree.

Utah's exceptions to waiver of governmental immunity closely parallel those enumerated under 28 U.S.C., § 2680(a) of the Federal Tort Claims Act. This Court has followed the lead of cases interpreting that act. *Frank v. State,* Utah, 613 P.2d 517 (1980). Beginning with the two root cases of *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) and *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the lines in federal cases have been consistently drawn between those functions ascribable to the policy making level and those to the operational level. State law has followed along analogous lines. Where the responsibility for basic policy decisions has been committed to one of the branches of our tri-partite system of government, the courts have refrained from sitting in judgment of the propriety of those decisions. *Johnson v. State,* 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352 (1968). If the State posits immunity on such an exercise of discretion, it

must make a showing that a conscious balancing of risks and advantages took place. *Id.* 73 Cal.Rptr. at 249, n. 8, 447 P.2d at 361, n. 8. To be purely discretionary, an act by the state must be affirmed under four preliminary questions:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Evangelical United Brethren Church of Adna v. State,* 67 Wash.2d 246, 407 P.2d 440 (1965).

The acts complained of here are the State's failure to properly evaluate the home into which Jennifer was to be placed, failure to properly supervise her placement, and failure to protect her from harm, when the State knew or should have known that such harm was likely. Assuming that the decision to place Jennifer in a foster home was a discretionary one, once that decision was made and the placement occurred, the question was no longer whether the child was to receive foster care but whether due care was exercised under a duty assumed. Where a breach of that duty can be shown, the government is held to the same standard as private individuals and cannot cloak itself with the mantle of discretion. There is ample precedent for that requirement in our forum. *Frank v. State,* supra; *Bigelow v. Ingersoll,* Utah, 618 P.2d 50 (1980); *Andrus v. State,* Utah, 541 P.2d 1117 (1975); *Carroll v. State Road Commission,* 27 Utah 2d 384, 496 P.2d 888 (1972).

■ Negligence under the Federal Tort Claims Act has been consistently held actionable where the conduct involved a nondiscretionary duty to perform a professional function unrelated to policy decisions. See *Payton v. United States,* 679 F.2d 475 (5th Cir.1982), decision of attorney general to place an insane prisoner in a mental institution and decision of parole board to release prisoner on parole are discretionary functions; not so, the failure of the prison medical board to examine the allegedly insane prisoner. *Rise v. United States,* 630 F.2d 1068 (5th Cir.1980), Army's decision to provide medical care for dependents is discretionary; not so, the admission of the patient to a hospital equipped with no facilities to treat aneurysm. We therefore hold that the failure of Family Services to properly evaluate the foster home, its failure to supervise Jennifer's placement and its failure to protect her from harm was a breach of conduct implemental in nature and thus properly held actionable when it was found to be negligent.

## EXPERT OPINION

■ Over the State's objection the court admitted expert testimony of Dr. Janice Sargent, instructor in the Department of Pediatrics, Division of Behavioral Pediatrics, University of Utah Medical School. She was then and had been involved with the evaluation of developmental delays, emotional problems and behavioral syndromes in children. The State's objection was based on Rule 56(2) of the Utah Rules of Evidence generally on the grounds that the expert had not attended the trial and had gained her information on Jennifer by hearsay only, and specifically on the fact that Jennifer's autism had not been diagnostically established. Dr. Sargent testified that headbanging beyond the age of two indicated serious organic or emotional disturbance, mental retardation or autism, requiring a neurological examination. She admitted that autistic children or those manifesting one or more autistic symptoms were extremely difficult to care for but stressed that professional training of adults could result in successful treatment of the behavior if not the disorder. A workbook for child care parents entitled Orientation To Therapeutic Child Care had been examined by her. A copy had been furnished to the foster parents here. It contained brief mention of autism but no reference to headbanging. The evidence before the trial court included the Juvenile Court order finding Jennifer dependent, manifesting autistic behavior, and in need of specialized assistance. The testimony of Dr. Sargent was offered to establish the standard of care required in the handling of a child with the symptoms exhibited by Jennifer. As such, the witness testified within the scope of her special knowledge, skill, experience or training. Rule 56(2)(b). She limited her testimony to generally accepted methods of treatment available to treat self-destructive behavior, both in professional care centers and in the home environment. She responded to a hypothetical question on autistic behavior and the difficulty of treatment.

This Court has repeatedly stated that the trial judge has the primary responsibility for determining whether a particular witness qualifies as an expert and its ruling will not be disturbed unless it was clearly in error. *Shurtleff v. Jay Tuft & Co.,* Utah, 622 P.2d 1168 (1980), and cases cited therein (lack of personal observation no ground for disqualifying expert testimony); *Fillmore City v. Reeve,* Utah, 571 P.2d 1316 (1977) (objection to expert's lack of first hand knowledge of defendant's operation without merit where testimony was to similar matters); *Lamb v. Bangart,* Utah, 525 P.2d 602 (1974) (testimony of veterinarian admissible when based upon records in evidence). While the State objected to Dr. Sargent's testimony on the grounds heretofore stated, we view the challenge to go to its weight and credibility, and absent a clear showing of abuse this Court will not reverse. *Lamb v. Bangart,* supra. Two cases cited us by the State are inapposite. *Day v. Lorenzo Smith & Son, Inc.,* 17 Utah 2d 221, 408 P.2d 186 (1965) (record did not disclose proper foundation to support expert witness's opinion testimony as to point of impact); *Edwards v. Diderickson,* Utah, 597 P.2d 1328

(1979) (opinion testimony was properly excluded, where it was based in part on information obtained from talking with the witnesses, inadmissible under the hearsay rule). Conversely, the record under review is devoid of any such defects, and we conclude that there was no abuse in admitting the testimony of the expert witness.

## NEGLIGENCE AND PROXIMATE CAUSE

■ The State next asserts that the evidence at trial was insufficient to support a finding of negligence on the part of Family Services, and that if negligent, such negligence was not established to have been the proximate cause of Jennifer's death. The pertinent part of the Findings of Facts reads as follows:

10. The Division of Family Services had a duty to protect JENNIFER, implicit in the juvenile statute and recognized by its own manual. The duty was violated in the following ways:

a. Failure to adequately train JENNIFER'S foster parents or whoever would take care of the child when the foster parents were gone.

b. Failure to make timely evaluations of her condition to prevent potential serious harm and injury.

c. Failure to provide inexpensive headgear for her which would have reduced the risk of possible serious harm and injury.

d. Lack of proper supervision at all times as indicated by allowing the child to be left under the supervision and care of _____, a seventeen (17) year old child who was in the custody of the _____ because of his own special problems and who slapped the child around during said care, triggering cerebral hemorrhaging that brought about JENNIFER'S untimely death.

11. JENNIFER LITTLE died on June 4, 1977, as a result of injuries to her head.

12. At the time of her death, JENNIFER had bruises on her face and body which were of various ages and in various stages of healing.

14. [sic] The Division of Family Services had a duty to take precautions to protect JENNIFER from harm when they knew or should have known that said harm was likely. JENNIFER'S death was the direct and proximate result of defendant's breach of said duty.

We will not disturb those findings unless it can be shown that they were clearly erroneous and not supported by competent evidence. *Kinkella v. Baugh,* Utah, 660 P.2d 233 (1983); *Hal Taylor Associates v. Unionamerica, Inc.,* Utah, 657 P.2d 743 (1982). In view of the trial court's finding that the State had a duty to protect Jennifer against the risk of harm, we shall examine the judgment in light of the following factors which normally obtain under a duty-risk analysis: [1]

1. Was there a factual connection between defendant's conduct and plaintiff's injury?—an issue of fact.

2. Was the risk to which the plaintiff was subjected within the scope of the defendant's duty? Whether defendant's conduct was a substantial cause or factor in the harm suffered by plaintiff determines whether legal liability extends sufficiently to protect the plaintiff—a question of law. What was the standard required of defendant to avoid liability? The standard of care must be gauged by the duty imposed—a question of fact.

3. Was the standard of care breached? —a question of fact.

In fitting the facts of the instant case to the elements just stated, we find as follows:

(1) The State took the child Jennifer from the plaintiffs, obtained temporary legal custody and placed her in a therapeutic foster home selected by the State. Legal custody over her remained in the State and the foster home continued to be controlled by the State. She suffered her injuries and died while in the foster home.

1. See generally Thode, Tort Analysis: Duty-Risk v. Proximate Cause And The Rational Allocation Of Functions Between Judge And Jury, 1977 Utah L.Rev. 1.

(2) "Legal custody" is defined in U.C.A., 1953, as amended, § 78–3a–2(7) as:

[A] relationship embodying the following rights and duties: the right to physical custody of a child; the right and *duty to protect,* train and discipline him; the duty to provide him with food, clothing, shelter, education, and ordinary medical care; the right to determine where and with whom he shall live, and the right, in an emergency, to authorize surgery or other extraordinary care. [Emphasis added.]

The statute specifically includes a duty to protect the child and thus, as a corollary, to protect the rights of the plaintiffs as her parents. We therefore hold that the protection of the law well extended to the interest the plaintiffs here seek to vindicate.

The State nonetheless claims that the trial court's finding that the negligence of Family Services was the proximate cause of the death of the child was based on mere conjecture not supported by the evidence. It contends that intervening and contributing factors proximately caused her death, and that it was not foreseeable. The evidence does not sustain that contention. The autopsy on Jennifer's body revealed no fractures of her skull, but her skin and scalp were covered with numerous small hemorrhages of various ages, signs of repeated injuries. The blows suffered at the hands of the foster brother were described by the medical expert as possibly the final, rather than the sole, trauma triggering death. The medical expert was unable to attribute death to just one significant methodology, because the imprint of a particular object on the surface of the scalp which would indicate a final blow of significance to cause death was missing. He considered the aggregate injury to be a significant contributing factor. The State's argument that the action of the foster brother was the sole proximate cause of death totally discounts the evidence just cited. Moreover, Jennifer's facial bruises had been brought to the attention of Family Services by both parents and foster parents. When evaluation was made, the foster parents were not informed that the child's condition called for affirmative steps to prevent further injury. Consequently, the trial court could have properly found that the negligent act of the State occurred independently to produce repeated injury and that the resulting harm was indivisible, but that a separate duty had been breached. *Mason v. Bitton,* 85 Wash.2d 321, 534 P.2d 1360 (1975); *DeMaris v. Brown,* 27 Wash.App.2d 932, 621 P.2d 201 (1980). So long as there was evidence that the State's concurrent negligence was a substantial factor in the child's death, legal liability reaches to vindicate the plaintiff's rights.

The State's duty to avoid risk of harm encompassed the promotion and enforcement of all laws for the protection of Jennifer, § 55–15b–6(5); providing shelter for her under promulgated standards for shelter care facilities, § 55–15b–6(6); and supervision of the child while in foster care and supervision of the foster care home, § 55–15b–2(13).

The standard of care is generally high where children are involved. *Wheeler v. Jones,* 19 Utah 2d 392, 431 P.2d 985 (1967) (applying a higher standard of care to a possessor of land catering to children's patronage); *In Re Tanner,* supra, (directing the Family Services, standing in loco parentis, to comply with its responsibility to provide corrective orthodontic treatment for dependent child). It is even higher where the law recognizes that a child is dependent and in need of specialized care. Therapeutic foster homes are specially developed to cope with the higher duties imposed because of known risks. Extraordinary situations call for extraordinary measures in the exercise of reasonable care.

(3) A breach of the exacting standard of care demanded here is satisfied by the affirmative finding that the State's conduct created an unreasonable risk of harm of the same general nature as that suffered by Jennifer and thus by these plaintiffs. "Whether the law imposes a duty does not depend upon foreseeability alone. The likelihood of injury, the magnitude of the bur-

den of guarding against it and the consequences of placing that burden upon defendant, must also be taken into account." *Lance v. Senior,* 36 Ill.2d 516, 224 N.E.2d 231 (1967). In Lance, a nine year old hemophiliac boy, an overnight guest in defendants' home, swallowed a needle, resulting in the injury and claim of negligence. The court held the defendants not negligent, as the child was of sufficient maturity to recognize his own condition. An extension of legal obligation to protect the plaintiff against such a remote possibility would tend to totally isolate hemophiliac children from social situations for fear of liability on the part of the public. Public policy therefore dictates that legal liability stops short of such a point. The instant case presents the other side of that coin. The risk that Jennifer would injure herself was great. The proven facts that the State knew that she was autistic or manifested autistic symptoms justified the imposition of a special duty. Jennifer could not guard against her injuries. She was removed from the plaintiffs' home to avoid special hazards to which her condition made her particularly vulnerable. The burden on the State was a heavy one as the duty was imposed by law. The trial court found that that duty had been breached and the record supports the judgment.

The judgment is affirmed. Costs are awarded to respondents.

HALL, C.J., STEWART and OAKS, JJ. and BALLIF, District Judge, concur.

DURHAM, J., does not participate herein.

BALLIF, District Judge, sat.