Mary DOE, Guardian ad Litem for Jane Doe, Plaintiff and Appellant,

v.

Roberto V. ARGUELLES, et al., Defendants and Respondents.

No. 19061.

Supreme Court of Utah.

Dec. 27, 1985.

Rehearing Denied April 1, 1986.

Carmen Kipp, George M. Haley, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for defendants and respondents.

HOWE, Justice:

Plaintiff sued the defendants Robert Arguelles, State of Utah, Ronald Stromberg, et al., on behalf of her 14-year-old ward who was raped, sodomized, and stabbed by Arguelles, a juvenile, while he was on placement in the community, but before he had been finally discharged from the Youth Detention Center (YDC). The court below granted the defendants' motion for summary judgment on the grounds that plaintiff's complaint alleged acts that were immune from suit under Utah's Governmental Immunity Act, U.C.A., 1953, §§ 63–30–1, *et seq.*, and also shielded by defendant Stromberg's quasi-judicial immunity for decisions made by him in his capacity as the acting superintendent of the YDC.

The only defendants involved in this appeal are the State and Stromberg, all others having been dismissed by stipulation of the parties. Under applicable standards of review, we state the facts most favorable to the plaintiff and resolve all doubts in her favor. *Draper Bank & Trust Co. v. Lawson,* Utah, 675 P.2d 1174 (1983). Summary judgment is proper only if the pleadings, depositions, affidavits, and admissions show that there is no genuine issue of material fact and that the defendants are

entitled to judgment as a matter of law. *Bushnell Real Estate, Inc. v. Nielson,* Utah, 672 P.2d 746 (1983).

On December 19, 1979, 17-year-old Arguelles and Stromberg signed a placement agreement which released Arguelles from the YDC into the community. One requirement of his conditional release was a weekly meeting with a professional counselor which had been strongly recommended by staff and professional personnel previously charged with Arguelles's treatment and rehabilitation. He had a history of sexual violence involving children, including forcible sexual abuse on a 10-year-old girl, sodomy on a 6-year-old girl, and two counts of rape on a 16-year-old girl. The sodomy charge was dismissed for lack of evidence; the rape charge was dropped in the interest of justice. The forcible sexual abuse complaint resulted in conviction. Staff at the Utah State Hospital, where Arguelles was enrolled in a sexual offender program for some time, assessed him as an extremely smooth, sophisticated young man, capable of manipulating his environment for his own satisfaction and pleasure, and a dangerous individual in need of a secured 24-hour residential setting. That evaluation echoed an earlier report sent to the juvenile judge as part of a presentence report. Mark Smith, Arguelles's probation officer for two years, considered Arguelles's behavior predictable "way ahead of time" and never doubted that he had the potential for extremely violent sexual behavior. The juvenile judge who committed Arguelles to the YDC expressed his grave concerns that Arguelles submit and respond to an effective treatment program before he was released back into the community, so that others would not be jeopardized by his behavior. He urged the State to meet its responsibility to treat the problem or, if that was impossible, to hold him in custody. Dr. Benjamin Taylor, a psychiatrist on contract with the YDC, after each of four sessions with Arguelles, warned of the possibility that Arguelles would find himself in a very tragic situation if he did not receive help, expressed strong dissatisfaction with the "fly-by-night" treatment that was being contemplated with Family Health Plan, and recommended instead a substantial professional therapy program as much as two to three times a week. Janet Warburton, a psychology trainee at the YDC, recommended that Arguelles not be released until he was established in a therapeutic relationship with a mature female therapist and warned that he continued to be a danger. Two weeks before Arguelles's release she again noted that long-term therapy treatment and a carefully monitored release program were imperative.

Arguelles was conditionally released because of his model behavior at the YDC. Thereafter, he had a total of four treatment sessions (one in December 1979, one in January, and two in February 1980) with Annette Gilmore, a graduate student in social work at Family Health Plan. Gilmore's name originally appeared on the placement agreement as Arguelles's therapist, but Stromberg struck her name from the agreement and replaced it with the words "a professional counselor." Stromberg admitted in deposition that he was concerned that Gilmore "may or may not have the ability to deal with this case" and wanted to assure that professional counseling was rendered. On March 6, 1980, less than three months after his placement in the community, Arguelles assaulted plaintiff's ward and was subsequently charged with attempted homicide, rape, and forcible sodomy.

Plaintiff assails the trial court's ruling that her claims against the State were barred by the Governmental Immunity Act and that quasi-judicial immunity shielded Stromberg from suit.

## DISCRETIONARY FUNCTION EXCEPTION

█ Under section 63-30-10(1), immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury "arises out of the exercise or performance or the failure to

exercise or perform a discretionary function, whether or not the discretion is abused." Plaintiff alleged negligence in Stromberg's conduct as superintendent as that conduct related to the confinement, treatment, and decision to release or place Arguelles. She claimed that Stromberg's negligence was the proximate cause of the attack on her ward and that the attack was the foreseeable result of his failure to exercise due care. Defendants respond that the acts and omissions complained of are discretionary in nature and thus the plaintiff's claims are barred. In determining whether the immunity defense applies here, we must first decide as a matter of law if Stromberg's acts which gave rise to plaintiff's complaint were discretionary. Defendants contend that Stromberg's decision to release Arguelles and place him in the community required the type of personal deliberation and judgment which is normally accorded the governmental immunity shield intended by section 63-30-10(1). Our recent decision in *Little v. Utah State Division of Family Services*, Utah, 667 P.2d 49 (1983), restated the proposition that "[w]here the responsibility for basic policy decisions has been committed to one of the branches of our tripartite system of government, the courts have refrained from sitting in judgment of the propriety of those decisions." It is widely held that the decision to release, parole, or put on probation criminal defendants, juvenile delinquents, or mental patients is a decision of a judgment, planning, or policy nature. *See generally Payton v. United States*, 679 F.2d 475 (5th Cir.1982); *Cairl v. State*, Minn., 323 N.W.2d 20 (1982); *Johnson v. State*, 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352 (1968); Annot., 6 A.L.R.4th 1155 (1981), and Annot., 5 A.L.R.4th 773 (1981). It accordingly follows that Stromberg's decision to place Arguelles fell into the category of functions designed to be shielded under the discretionary function exception, and his decision should not be questioned in a court of law. However, that does not end our inquiry in this case.

Stromberg was appointed superintendent of the YDC by the Division of Family Ser-

vices to be the executive and administrative head of the YDC. U.C.A., 1953, § 64-6-5 (repealed 1981). As administrative head, he had authority to adopt policies and rules for the regulation of all the concerns of the YDC not inconsistent with law, subject to concerns of the YDC not inconsistent with law, subject to the approval of the division director and the Board of Family Services. § 64-6-3 (repealed 1981). Those rules provided for the placement of students outside of the center,

> but such student shall remain in the legal custody and under the control of the center, and shall be subject at any time to be returned to the center, unless otherwise discharged. Full power to retake and keep any child on placement is conferred upon the superintendent of the center, whose written order shall be sufficient warrant to any officer authorized to make arrests to return to actual custody any student on placement.

§ 64-6-8 (repealed 1981).

Contrary to Stromberg's assertion in his deposition, he did not lose jurisdiction over Arguelles upon placing him in the community. Legal custody remained in the YDC, and Stromberg was both authorized and responsible to designate a qualified person to supervise Arguelles's conditional release. § 64-6-1.1(5) (repealed 1981). However, by designating a person to supervise Arguelles, Stromberg did not relieve himself of his duties to control Arguelles. The statutory qualifications of a superintendent demanded eight years of a combination of university training and experience in professional administration in fields related to the functions and administration of the YDC. § 64-6-5 (repealed 1981). Stromberg had authority to carry out innovative and cooperative programs in the care, treatment, placement, training, and evaluation of his charges. § 64-6-2 (repealed 1981). In that executive role, he owed duties to implement policy on a day-to-day, case-by-case basis.

■ Operational, routine, everyday matters not requiring evaluation of broad

policy factors and which only implement established policy are nondiscretionary, ministerial functions. A decision or action implementing a preexisting policy is operational in nature and is undeserving of protection under the discretionary function exception. *Little v. Utah State Division of Family Services,* 667 P.2d at 52; *Bigelow v. Ingersoll,* Utah, 618 P.2d 50 (1980); *Frank v. State,* Utah, 613 P.2d 517 (1980). Because a probation officer's policy decisions are discretionary, he is immune from suit arising from those decisions. However, his acts implementing the policy must be considered on a case-by-case basis to determine whether they are ministerial and thereby outside the immunity protections. *Semler v. Psychiatric Institute of Washington, D.C.,* 538 F.2d 121 (4th Cir.1976) (citing *Johnson v. State,* 73 Cal.Rptr. at 250, 447 P.2d at 362).

■ By requiring weekly therapy sessions with a professional counselor, Stromberg personally implemented his decision to place Arguelles in the community. He was aware of the warnings from professionals that those treatments were imperative. Yet plaintiff asserts that he no more than in passing inquired about Arguelles's progress and that he was not alarmed when he heard that Arguelles was treated by the Family Health Plan workers whom he had considered inadequate. His ongoing duty required an active, ongoing concern for Arguelles and the community. If it can be shown at trial that the injury to plaintiff's ward was proximately caused by Stromberg's omissions, it did not result from the discretion vested in him to place Arguelles in the community, but from his negligence in monitoring the prescribed treatment after making the discretionary decision to do so. Under those circumstances, the State would not be immune from suit under the discretionary function exception.

### QUASI–JUDICIAL IMMUNITY

■ Stromberg attempts to seek refuge from liability in the common law principle of quasi-judicial immunity which is sometimes extended to public officers and employees. We note that section 63–30–4 was amended in 1978 to add subsection (2), which provides:

> Nothing in this chapter shall be construed as adversely affecting any immunity from suit which a governmental entity or employee may otherwise assert under state or federal law.

Thus, our Governmental Immunity Act recognizes and preserves quasi-judicial immunity where applicable. In *Cornwall v. Larsen,* Utah, 571 P.2d 925 (1977), we held that a governmental agent performing a discretionary function is immune from suit for injury arising therefrom, but not when he is performing nondiscretionary tasks or acting in a ministerial capacity. *See also Connell v. Tooele City,* Utah, 572 P.2d 697 (1977), and *Frank v. State,* 613 P.2d at 520. In accordance with our discussion above concerning the State's immunity, it follows that Stromberg would enjoy no quasi-judicial immunity in the implementation of the plan of supervision which he had prescribed for Arguelles. However, the legislature has mandated in section 63–30–4(4) (as written in 1980 when plaintiff's injury arose) that no employee may be held personally liable unless it is established that his act or omission constituted gross negligence.[1] Plaintiff will thus be put to that high test in order to fix Stromberg's personal liability.

The summary judgment in favor of the State and Stromberg is reversed, and the case is remanded for a trial in accordance with this opinion.

HALL, C.J., and STEWART, DURHAM, and ZIMMERMAN, JJ., concur.

---

**1.** Statute later amended, deleting liability for     gross negligence.