**Harry and Eva SMITH, natural parents of Anthony Smith, a minor, Plaintiffs and Appellants,**

v.

**WEBER COUNTY SCHOOL DISTRICT, and G. Lynn Knight, Defendants and Appellees.**

No. 930596–CA.

Court of Appeals of Utah.

July 7, 1994.

Gordon K. Jensen, Salt Lake City, for plaintiffs and appellants.

William J. Hansen, Mark L. Anderson, and Karra J. Porter, Salt Lake City, for defendants and appellees.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

Harry and Eva Smith appeal from a summary judgment in a wrongful death action in favor of the Weber County School District and G. Lynn Knight, a school bus driver employed by the District. We affirm.

## FACTS

On appeal from a summary judgment, "we consider the facts in the light most favorable to the party against whom the judgment was rendered." *Beach v. University of Utah,* 726 P.2d 413, 414 (Utah 1986). We recite the facts accordingly.

Anthony Smith, the fourteen-year-old son of Harry and Eva Smith, was a student at Wahlquist Junior High School in the Weber County School District. In order to attend school, he crossed a busy street each morning to meet the school bus. Eva Smith sent a letter to Wahlquist Junior High School in 1988, complaining of the danger posed by the location of the bus stop. In 1989, Mrs. Smith had Anthony hand-deliver a letter to Mr. Knight, the bus driver, expressing the same concern. Neither the school nor the District responded to the letters, and the location of the bus stop was not changed.[1]

On November 26, 1990, while crossing the street to reach the bus stop, Anthony was struck and killed by a van driven by a third party. The school bus had not yet reached the bus stop at the time of the accident. Knight, the bus driver, first observed Anthony lying in the middle of the street from a distance of approximately thirty to forty yards from the bus stop.

The Smiths brought a wrongful death action against the District and Knight, alleging that the District was negligent in locating the bus stop and operating the school bus on the west side of the street, thus requiring Anthony to cross the street every morning. They also claimed that Knight was negligent in failing to activate the flashing red lights on the bus as he approached the bus stop.

---

1. The record does not indicate how the complaints were handled, i.e., whether they were received, investigated, postponed for future consideration, or rejected as groundless.

Appellees moved for summary judgment. The trial court granted summary judgment in favor of the District, concluding that the Utah Governmental Immunity Act precluded the action and that the District owed no duty to Anthony to change the bus stop or route. In addition, the court ruled that Knight was not negligent in failing to activate the flashing lights and that any such failure was not the proximate cause of Anthony's death. The Smiths appeal, challenging each of the court's rulings.

"Summary judgment is appropriate only where there exists no genuine issue of material fact and the moving party is entitled to judgment as [a] matter of law. We accord no deference to the trial court's conclusions of law, reviewing them for correctness." *Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991) (citations omitted). Moreover, in negligence cases, summary judgment should be "granted with great caution." *Apache Tank Lines, Inc. v. Cheney*, 706 P.2d 614, 615 (Utah 1985).

### I. CLAIM AGAINST SCHOOL BUS DRIVER

The Smiths allege that the trial court erred in ruling that Knight was not negligent as a matter of law in failing to activate the flashing red lights on the bus as he approached the bus stop. The trial court relied upon Utah Code Ann. § 41-6-100.10(3) (1989), which establishes the standard of care for activating flashing red lights on school buses. The statute provides:

(a) The operator of a school bus shall operate alternating flashing red light signals at all times when children are unloading from a school bus to cross a highway, or when a school bus is stopped for the purpose of loading children who must cross a highway to board the bus, or at any other time when it would be hazardous to proceed past the stopped school bus.

(b) The alternating flashing red light signals may not be operated except when the school bus is stopped for loading or

unloading school children or for any emergency purpose.

*Id.*

The court concluded that school bus operators must activate flashing red lights only when the bus is stopped. Based upon that conclusion, the court determined that Knight did not breach a duty to Anthony because the bus was not stopped at the time of the accident. The court, therefore, held that Knight was not negligent as a matter of law.

We agree with the trial court. In all instances, the duty to activate the lights arises only when the vehicle is stopped. Because the school bus was still approaching the bus stop and therefore was not "stopped," Knight was not negligent as a matter of law in failing to activate the lights.[2]

### II. CLAIM AGAINST THE DISTRICT

Normally, an appellate court will treat the traditional tort liability question before analyzing governmental immunity, *Ledfors v. Emery County School District*, 849 P.2d 1162, 1163-64 (Utah 1993), because "sovereign immunity is an affirmative defense which arises conceptually after the determination of tort liability." *C.T. v. Martinez*, 845 P.2d 246, 247 (Utah 1992). However, when the governmental immunity question is clear and dispositive, a court may reach the issue without first resolving the duty question. *Petersen v. Board of Educ.*, 855 P.2d 241, 243 (Utah 1993) (per curiam). Because we can affirm on the issue of governmental immunity, we treat it first and assume, without deciding, the less clearcut question of duty.

#### A. Governmental Immunity

The Utah Supreme Court has set forth the following framework for analyzing governmental immunity:

The Utah Governmental Immunity Act requires that [the court] address three questions in determining whether a governmental entity is immune from suit.

---

2. Because we conclude that Knight was not negligent as a matter of law, we need not reach the Smiths' challenge to the trial court's ruling that there was no proximate cause between the driv-

er's failure to activate the flashing lights and Anthony's injuries. *Steffensen v. Smith's Management Corp.*, 862 P.2d 1342, 1344 (Utah 1993).

First, was the activity the entity performed a governmental function and therefore immunized from suit by the general grant of immunity contained in section 63–30–3? Utah Code Ann. § 63–30–3 (1989) (now codified at § 63–30–3(1)): Second, if the activity was a governmental function, has some other section of the Act waived that blanket immunity? Third, if the blanket immunity has been waived, does the Act also contain an exception to that waiver which results in a retention of immunity against the particular claim asserted in this case?

*Ledfors,* 849 P.2d at 1164; *accord Petersen,* 855 P.2d at 243. We follow this analytical framework.

The functions in question are the design of school bus routes and the choice of bus stops. Neither party disputes that these functions are governmental functions implicating the blanket immunity in Utah Code Ann. § 63–30–3 (1989). Therefore, we turn to the second consideration.

The Smiths assert that three specific waivers of immunity allow their claim to proceed. We consider each in turn.

### B. Section 63–30–7

First, the Smiths invoke Utah Code Ann. § 63–30–7 (1989) (repealed 1991), which provided: [3]

> Immunity from suit of all governmental entities is waived for injury resulting from the negligent operation by any employee of a motor vehicle or other equipment during the performance of his [or her] duties, within the scope of employment, or under color of authority; provided, however, that this section shall not apply to the operation of emergency vehicles as defined by law and while being driven in accordance with the requirements of Section 41–6–14.

This section waives immunity for injury arising out of a government employee's negligent operation of a motor vehicle. We have al-

ready concluded that Knight was not negligent as a matter of law in driving the school bus. Therefore, the waiver of immunity contained in section 63–30–7 does not apply to the facts of this case.

### C. Section 63–30–8

■ Next the Smiths rely on Utah Code Ann. § 63–30–8 (1989) (amended 1991),[4] which at the time of this lawsuit stated:

> Immunity from suit of all governmental entities is waived for any injury caused by a defective, unsafe, or dangerous condition of any highway, road, street, alley, crosswalk, sidewalk, culvert, tunnel, bridge, viaduct or other structure located thereon.

Under section 63–30–8, immunity is waived for unsafe or dangerous highway conditions. This exception has been employed when some physical aspect of a highway is dangerous. For example, in *Richards v. Leavitt,* 716 P.2d 276 (Utah 1985) (per curiam), the condition in question was the growth of trees and shrubs that obscured motorists' vision at an intersection, leading to an automobile accident. *Id.* at 277. Similarly, in *Bigelow v. Ingersoll,* 618 P.2d 50 (Utah 1980), *superseded on other grounds by rule, as stated in Workman v. Nagle Construction, Inc.* 802 P.2d 749, 751 n. 4 (Utah App.1990), a malfunctioning traffic signal was at issue. *Id.* at 51; *see also McCorvey v. UDOT,* 868 P.2d 41 (Utah 1993) (excess gravel on highway and absence of construction warning signs); *Ingram v. Salt Lake City,* 733 P.2d 126 (Utah 1987) (per curiam) (negligently placed manhole cover); *Bowen v. Riverton City,* 656 P.2d 434 (Utah 1982) (stop sign lying on ground); *Velasquez v. Union Pac. R.R. Co.,* 24 Utah 2d 217, 469 P.2d 5 (1970) (absence of warning device at railroad crossing).

Here, the Smiths do not point to any aspect of the road itself that was unsafe, nor to any structure on the roadway that was unsafe. Indeed, the governmental function they criticize does not involve the construc-

---

**3.** Section 63–30–7 was repealed after this cause of action arose.

**4.** Effective April 29, 1991, § 63–30–8 was amended to include the following introductory phrase: "Unless the injury arises out of one or

more of the exceptions to waiver set forth in Section 63–30–10." Utah Code Ann. § 63–30–8 (1993). Other stylistic changes were made that did not affect the substance of the provision. *See id.*

tion or maintenance of a highway or appurtenant structure, but the design of a school bus route and the designation of bus stops. The gravamen of their claim is that the District negligently located the bus stop on the "wrong side" of a busy street. This use of section 63-30-8 is strained. We cannot assume the legislature intended to include the function of designing school bus routes within this waiver. The legislature could choose to specifically waive immunity for the negligent or defective design of school bus routes, but that is its task; this court will not usurp that role by using the expansive interpretation of section 63-30-8 that the Smiths urge. We thus agree with the trial court that this exception does not apply to the Smiths' claim against the District.[5]

### D. Section 63-30-10(1)

█ Finally, the Smiths rely on Utah Code Ann. § 63-30-10(1) (1989), claiming that employees of the District negligently designed the school bus route. That section provided:

> Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment. . . .

*Id.*[6] However, that waiver is subject to certain exceptions. Relevant to this appeal is

the provision retaining immunity for injury that "(a) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused." *Id.* § 63-30-10(1)(a).[7] The trial court concluded that the design of school bus routes and the consequent placement of school bus stops were immune discretionary functions under section 63-30-10(1)(a).

It is important to understand the nature of the discretionary function exception. The Utah Supreme Court has defined a discretionary function as "one which requires a 'basic policy decision essential to the realization or accomplishment of some basic governmental policy, program, or objective.' " *Morrison v. Salt Lake City Corp.*, 600 P.2d 553, 555 (Utah 1979) (quoting *Carroll v. State Road Comm'n*, 27 Utah 2d 384, 389, 496 P.2d 888, 891 (1972)). Elaborating on that definition, the court stated that the intent of the exception is "to shield those governmental acts and decisions impacting on large numbers of people in a myriad of unforeseeable ways from individual and class legal actions, the continual threat of which would make public administration all but impossible." *Frank v. State*, 613 P.2d 517, 520 (Utah 1980), *modified in part on other grounds by Hansen v. Salt Lake County*, 794 P.2d 838, 843 n. 10 (Utah 1990).

---

5. The Smiths also claim that either of these first two grounds for waiver of immunity trumps the retention of immunity for discretionary functions found in Utah Code Ann. § 63-30-10(1)(a) (1989) (amended 1990). Admittedly, there has been some confusion concerning the interplay of specific waivers of immunity and the retained immunity in § 63-30-10. *Compare Provo City Corp. v. State*, 795 P.2d 1120, 1125 (Utah 1990) (stating § 63-30-10 exceptions are subject to other waivers); *Sanford v. University of Utah*, 26 Utah 2d 285, 292, 488 P.2d 741, 745 (1971) (holding § 63-30-10 did not modify §§ 63-30-8 and -9); *Gleave v. Denver & Rio Grande W. R.R. Co.*, 749 P.2d 660, 667 n. 6 (Utah App.), *cert. denied*, 765 P.2d 1278 (Utah 1988) (concluding § 63-30-8 waiver was not subject to discretionary function exception) *with Duncan v. Union Pac. R.R. Co.*, 842 P.2d 832, 834-36 (Utah 1992) (relying on discretionary function exception); *Velasquez v. Union Pac. R.R. Co.*, 24 Utah 2d 217, 218, 469 P.2d 5, 6 (1970) (concluding that even if § 63-30-8 applied, discretionary function exception still barred recovery).

However, the legislature resolved that uncertainty in 1991, when it added the following introductory phrase to §§ 63-30-8 and -9: "Unless the injury arises out of one or more of the exceptions to waiver set forth in Section 63-30-10." Utah Code Ann. §§ 63-30-8, -9 (1993). This amendment makes clear that the exceptions to waiver in § 63-30-10 take precedence over the waivers of immunity in §§ 63-30-8 and -9 (§ 63-30-9 is not implicated in this case, but its revision is illustrative). The Smiths argue that this statutory amendment should not be applied retroactively, citing *id.* § 68-3-3. Because we conclude that neither § 63-30-7 nor 63-30-8 would apply in any event, we need not decide that question.

6. This language is now designated as Utah Code Ann. § 63-30-10 (1993) and is followed by 18 enumerated exceptions.

7. This section was redesignated as § 63-30-10(1) pursuant to the 1990 amendments to the statute. *See* Utah Code Ann. § 63-30-10(1) (1993).

The supreme court has also offered guidance in assessing whether a governmental act is discretionary and thus immune, adopting a four-part inquiry employed by the Washington Supreme Court:

> "(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?
>
> (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
>
> (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
>
> (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?"

*Little v. Utah State Div. of Family Servs.,* 667 P.2d 49, 51 (Utah 1983) (quoting *Evangelical United Brethren Church of Adna v. State,* 67 Wash.2d 246, 407 P.2d 440 (1965)). Applying the *Little* approach, the trial court concluded that each of the four elements was met in the instant case. We agree.

First, we agree that a basic governmental program and objective are involved, namely the public education of children. The challenged act involves the adoption and implementation of policies and procedures managing the transportation of over 12,000 students to thirty-seven schools. Regarding the second factor, we conclude that decisions concerning the location of bus stops and routes are "essential to the realization or accomplishment" of the school transportation program and thus the public education of children.

We also conclude that the implementation of school transportation policies, in particular the choice of school bus routes, requires District employees to exercise basic policy evaluation, judgment, and expertise. Utah case law supports such a conclusion. For example, in *Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp.,* 784 P.2d 459 (Utah 1989), the governmental entity being sued was responsible for determining whether to make improvements at public expense to deal with possible future flooding. *Id.* at 463–64. The court concluded that "[e]ven if defendants were presented with information indicating that the City Creek drainage system was inadequate ..., it would still require a considerable policy evaluation, judgment, and expertise to determine whether changes or improvements should be made." *Id.* Similarly, in this case, the District had to balance safety, feasibility, and cost effectiveness in establishing and reviewing bus routes.

The case of *Duncan v. Union Pacific Railroad Co.,* 842 P.2d 832 (Utah 1992), is also illustrative. In *Duncan,* the Utah Department of Transportation (UDOT) decided to defer improving the warning devices at a particular crossing when the adequacy of those devices had been questioned. *Id.* at 835. The court rejected the characterization of that decision as merely operational, reasoning that UDOT's surveillance team had to evaluate and prioritize crossings and upgrade them only to the extent financially feasible. *Id.* As such, UDOT's activities satisfied the four-prong *Little* test. The court stated: "UDOT exercises 'basic policy evaluation, judgment and expertise' in utilizing a surveillance team to weigh the degree of hazard at the crossings it inspects and to subsequently assign priorities to those crossings where the greatest hazard exists." *Id.* The court emphasized that the decision to improve the warning device at the crossing in question was part of a system involving hundreds of crossings and could not be viewed in isolation. *Id.* Here, too, the bus stop and route in question were part of a vast system serving an entire school district. Moreover, the Superintendent of Transportation had to balance competing concerns and exercise judgment in setting the routes, much like the surveillance team in *Duncan.*[8]

Finally, as to the fourth factor, neither party disputes the District's statutory au-

---

8. For discussions of similar immune discretionary functions, *see, e.g., Doe v. Arguelles,* 716 P.2d 279, 282 (Utah 1985) (considering decision to confine, treat, release, and place juvenile); *Ept-* *ing v. State,* 546 P.2d 242, 244 (Utah 1976) (discussing decision to place prisoner in work release program); *Velasquez v. Union Pac. R.R. Co.,* 24 Utah 2d 217, 219, 469 P.2d 5, 6 (1970)

thority to adopt and implement policies concerning school transportation. Thus, the functions involved in this case satisfy the four criteria set forth in *Little;* accordingly, we hold that the trial court was correct in concluding that these functions are immune discretionary functions under Utah Code Ann. § 63–30–10(1)(a) (1989).

## CONCLUSION

The bus driver, Knight, was not negligent as a matter of law. The District is immune from suit. Therefore, the trial court correctly granted summary judgment in favor of the District and Knight.

BENCH and ORME, JJ., concur.

---

(analyzing decision whether to install warning signals at railway crossings).

In contrast, in *Bigelow v. Ingersoll,* 618 P.2d 50 (Utah 1980), *superseded on other grounds by rule, as stated in Workman v. Nagle Construction, Inc.,* 802 P.2d 749, 751 n. 4 (Utah App.1990), the court concluded that the design of a traffic light, which caused the light for westbound traffic to turn green while the light for eastbound traffic was still green, was a nondiscretionary function. *Id.* at 53. As the *Duncan* court stressed in discussing *Bigelow,* "there was a malfunction which was completely unintended and unanticipated and *did not result from the exercise of anyone's*

judgment." *Duncan,* 842 P.2d at 836. Similarly, in *Irvine v. Salt Lake County,* 785 P.2d 411 (Utah 1989), the court concluded that the allegedly negligent dredging of a creek was not an immune discretionary function. *Id.* at 413. The dredging was part of a regular program to clear stream channels of debris, but the injury giving rise to the suit arose not from the program as a whole but rather from one individual's negligent operation of a backhoe that injured a water line. *Id.* at 412. These cases did not involve the governmental design of overall systems; rather, they dealt with operational acts unrelated to the decision-making process.