**Krystal GADD, a minor, By and Through her Guardian, Brian GADD, and George Gadd, Plaintiffs,**

v.

**UNITED STATES of America, State of Utah, the Utah Department of Wildlife Resources, Defendants.**

No. 2:94–CV–0527–S.

United States District Court, D. Utah, Central Division.

April 29, 1997.

Tad D. Draper, Midvale, UT, Rick Carter, Clark & Carter, Yuma, AZ, for plaintiffs.

Scott M. Matheson, Jr., U.S. Atty., Jill N. Parrish, Stephen L. Roth, Salt Lake City, UT, Dan L. Larsen, Utah Attorney General's Office, Peter Stirba, Stirba & Hathaway, Salt Lake City, UT, for defendants.

## I. *INTRODUCTION*

SAM, District Judge.

The court has before it the United States's motion to dismiss and its alternative motion for summary judgment, as well as the motion for summary judgment of defendants State of Utah and The Utah Department of Wildlife Resources.

Briefly, the facts are as follows. On June 23, 1992, plaintiffs were camping at the United States Forest Service's Flintlock Campground [1], situated within Wasatch County, Utah. Around midnight a black bear broke into a pickup truck camper shell in which plaintiff Krystal Gadd was sleeping and dragged her away. Krystal was rescued by her grandfather, plaintiff George Gadd, who confronted the bear and eventually drove it off. Krystal suffered serious wounds requiring hospitalization and surgery. Plaintiff George Gadd was not physically injured dur-

---

1. The Heber Ranger District of the United States Forest Service ("Forest Service") operates a number of recreational complexes and campgrounds around the area of the Strawberry and Soldier Creek Reservoirs in the Uinta National Forest. These include the Strawberry Bay Re- creational Complex, the Aspen Grove Campground and the Soldier Creek Recreational Complex. The Flintlock Campground is located within the Soldier Creek Recreational Complex. The entire reservoir area and surrounds is often referred to as the "Strawberry Area".

ing the encounter, but seeks damages for emotional distress. Plaintiffs in their complaint set forth six separate claims for relief alleging their injuries were due to the negligence of the United States and the State of Utah. As summarized by plaintiffs, their complaint "in essence, alleges that the attack was caused by numerous negligent acts/or omissions regarding the operation, management, control and supervision of the Strawberry Recreation Area and the wildlife contained therein." Plaintiffs' Memorandum in Opposition, p.ii.

By its motion, the United States requests that the court dismiss plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(1) because they fall within the discretionary function exclusion of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), and the court, therefore, lacks subject matter jurisdiction. The United States also requests that plaintiffs' claim based on strict liability be dismissed because the FTCA extends only to wrongful or negligent acts, not to claims based on absolute liability, and consequently the court lacks subject matter jurisdiction. Alternatively, the United States seeks summary judgment on the grounds that it owed no duty to plaintiffs.

Defendants State of Utah and The Utah Department of Wildlife Resources (sometimes collectively the "State") seek summary judgment on plaintiffs' claims asserting they had no duty to protect plaintiffs from wild animals; that there was no breach of any duty owed; that wildlife management is a discretionary function for which it has immunity; and, that it is immune under the public duty doctrine. The State also contends that plaintiffs' claim for negligent infliction of emotional distress is barred, and that it is not liable for failure to inspect or negligent inspection.

## II. MOTION TO DISMISS STANDARD

When a motion to dismiss is filed, the burden is on the movant to prove that the non-movant can prove no set of facts in support of his claim which would entitle him to relief. *Shoultz v. Monfort of Colorado. Inc.,*

754 F.2d 318 (10th Cir.1985), *cert. denied,* 475 U.S. 1044, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court is to presume for purposes of considering the motion that all allegations by the non-movant are true and all reasonable inferences are made in favor of the non-movant. *Lafoy v. HMO Colorado,* 988 F.2d 97 (10th Cir.1993); *Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Legal conclusions, deductions, and opinions couched as facts are, however, not given such a presumption. *Mitchell v. King,* 537 F.2d 385 (10th Cir.1976); *Swanson v. Bixler,* 750 F.2d 810 (10th Cir.1984). The likelihood that the plaintiff may or may not prevail at trial is immaterial at the time of decision on a motion to dismiss. *Boudeloche v. Grow Chem. Coatings Corp.,* 728 F.2d 759 (5th Cir.1984).

## III. SUMMARY JUDGMENT STANDARD

■ Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[2] *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (2d ed.1983).

When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. In a case where a party

---

**2.** Whether a fact is material is determined by looking to relevant substantive law. *Anderson v.* *Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case.[3] *Id.,* 477 U.S. at 323, 106 S.Ct. at 2552–53. "[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .

*Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id.,* 477 U.S. 242, 106 S.Ct. 2505.

## IV. DISCUSSION

### A. United States' Motion to Dismiss

The United States seeks dismissal of plaintiffs' claims against it contending that the pertinent actions of the Forest Service fall under the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), and, therefore, the court lacks subject matter jurisdiction. Similarly, the United States contends that the court lacks subject matter jurisdiction to hear plaintiffs' claim of absolute liability based on the plaintiffs' assertion that operation of the campground amounted to an ultra-hazardous activity because the FTCA does not waive sovereign immunity of the United States for claims based on strict liability. Plaintiffs concede this latter issue and, therefore, the United States' motion as to immunity for claims of strict liability is granted without further discussion. *See* Memorandum In Opposition, p.iv n. 4.

### 1. Discretionary function exception

■ The United States first contends that plaintiffs' claims against it are barred because of the discretionary function exception to the FTCA.[4] For the reasons that follow,

---

**3.** In his dissent in *Celotex,* Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

> Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy

of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

477 U.S. at 323, 106 S.Ct. at 2552–53 (citations omitted)

**4.** *See* generally, *Domme v. United States,* 61 F.3d 787, 788–789 (10th Cir.1995), wherein the discretionary function exception is explained as follows:

> Under the FTCA, the United States waives its sovereign immunity with respect to certain in-

the court agrees. The FTCA authorizes actions against the United States for damages caused by the negligence of government employees under circumstances where a private person would be liable under state law. 28 U.S.C. § 1346(b). However, sovereign immunity is not waived under the FTCA as to "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Thus, the determination of whether the discretionary function exception applies is independent of any considerations of negligence. *Dalehite v. United States,* 346 U.S. 15, 32, 73 S.Ct. 956, 966, 97 L.Ed. 1427 (1953).

▋ A two-pronged test is used to determine whether the discretionary function exception applies. First, "[t]he exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *United States v. Gaubert,* 499 U.S. 315, 321, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). Second, if the conduct in question is the product of judgment or choice, the court must decide "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" i.e. decisions "'grounded in social, economic and political policy ...'" *Id.* at 322–323, 111 S.Ct. at 1274 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958–59 and *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984)).

### a. Was the challenged conduct a matter of choice or judgment?

The United States contends that the first prong of the two-part test is satisfied because the Forest Service's decisions regarding campground management including warning the public about black bears are matters of discretion. On the other hand, plaintiffs urge that the duty of the United States to post warnings or notices regarding dangers posed by bear activity, was absolutely prescribed by section 2332.12 of the Forest Service Manual and, therefore, no discretion was involved.

▋ "[T]he discretionary function exception does not shield conduct that is specifically mandated by a federal statute, regulation or policy." *Domme v. United States,* 61 F.3d 787, 789 (10th Cir.1995). However, general admonitions that leave the question of "how to attain ... public health and safety goal[s]" unresolved are discretionary. *Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1541 (10th Cir.1992) (construing *Allen v. United States,* 816 F.2d 1417 (10th Cir.1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988)). Forest Service Manual chapter 2330 directs that health and safety related items be given the highest priority, providing that "[t]o the extent practicable" safety hazards should be eliminated from recreation sites. *Id.* § 2332.1. However, the only risk specifically addressed is hazardous trees on recreation sites. *Id.* § 2332.11. Other natural hazards are treated as follows:

> If possible, correct known natural hazards when a site is developed and opened for public use. If it is not possible to remove the hazard, take immediate steps

juries caused by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). The FTCA contains an exception to this broad waiver of immunity, however, for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a). Section 2680(a) is commonly referred to as the "discretionary function exception" to the FTCA.... "The discretionary function exception ... marks the boundary between Congress' will-

ingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." ... If the discretionary function exception applies to the challenged governmental conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit....

Only if the United States waives its sovereign immunity pursuant to the FTCA does the question of whether the government owed the plaintiffs a duty of care under state law arise.

to protect the public from the hazard. Tailor the action taken to each hazardous situation. Post signs or other notices at a minimum. Consider installing barriers or closing the site altogether to ensure public safety.

*Id.* § 2332.12. The Forest Service interprets the "known natural hazards" language to mean only those risks which are specific to a particular site, as opposed to risks which are part of the general background of the national forests or not otherwise likely at a particular place including wild animals such as bears. Declaration of Brent H. McBeth at §§ 9, 11. The Forest Service's interpretation of section 2332.12 is entitled to deference. *See City of Aurora v. Hunt,* 749 F.2d 1457, 1461–62 (10th Cir.1984) ("agency's administrative interpretation of its own regulations is 'of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'... Even if an agency's interpretation is not the only one permitted by the language of the rule, courts must respect it if it is at least a reasonable interpretation"), overruled on other grounds, *Village of Los Ranchos De Albuquerque v. Marsh,* 956 F.2d 970 (10th Cir.1992). The court concludes that the Forest Service's interpretation of section 2332.12 is reasonable and not plainly erroneous or inconsistent with the language of that section. Therefore, where a hazard, such as bears, is not a known natural hazard directly associated with a particular site, the decision whether to post warning signs would be discretionary.

▮ The facts reflect that a hazard from a bear attack at the Flintlock Campground was improbable, much less a known hazard. The United States succinctly states the relevant facts as follows:

1) the entire peninsula on which Flintlock was located was uninviting to bears and poor quality bear habitat at best, in contrast with the area across the reservoir where Aspen Grove Campground was located, which had ample cover and food sources; 2) a black bear had never before been seen on the peninsula or in Flintlock Campground; 3) the only bear siting [sic] ever in a Forest Service campground in the entire Strawberry area was in the As-

pen Grove Campground in 1990, nearly two years prior to the Gadd attack, when a bear got into food and garbage; 4) DWR had reported to the Forest Service that the problem bear had been killed in the fall of 1990 and that no more bear problems were expected in the area; 5) there were, in fact, no further bear sightings in campgrounds until the Gadd attack; and 6) plaintiffs' expert, as well as Forest Service and DWR professionals, have opined that it was highly unlikely that a bear would be found on the peninsula or in Flintlock.... In addition, plaintiffs concede that their own expert "did not indicate that the posting of written notices was specifically required in the Flintlock Campground."

Reply Memorandum of the United States pp. 8–9 (citations and footnotes omitted). The court agrees with the United States that although plaintiffs in conclusory fashion dispute some of the foregoing facts, they offer no evidentiary basis for their conclusion. The facts marshaled by plaintiff in opposition to the United States' position focus on the presence of a bear one and two years earlier in the Aspen Grove Campground and adjacent cabin areas. Such evidence is not relevant to the present matter not only because there is no material relationship in time or space between the Aspen Grove and adjacent cabins reports and the attack on plaintiff one to two years later at Flintlock, but also because of the unlikely bear habitat at Flintlock.

### b. Are decisions susceptible to policy analysis?

▮ The court, having concluded that the challenged conduct involves discretionary judgment, proceeds to the second prong of the discretionary function test which is to "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959. "The exception ... protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537, 108 S.Ct. at 1959. *See also Domme v. United States,* 61 F.3d 787, 791 (10th Cir.1995) (quoting *Gaubert,* 499 U.S. at 324–25, 111 S.Ct. at 1274–75),

In the Supreme Court's most recent case involving the discretionary function exception, the Court stated:

When established governmental policy ... allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.... The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by ... regulations, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

The United States has adequately set forth a statutory, regulatory and guideline basis supporting the conclusion that decisions of the type at issue are susceptible to policy analysis. In the Multiple–Use Sustained–Yield Act of 1960, 16 U.S.C. §§ 528 *et seq.*, Congress declared that the national forests of the United States have been established, and are to be administered, for "multiple-use" purposes, including "outdoor recreation, range, timber watershed, and wildlife and fish purposes." 16 U.S.C. §§ 528, 529. The responsibility of the Forest Service with regard to wildlife, including bears, is generally limited to managing "wildlife habitat ... to maintain viable populations" in cooperation with the state fish and wildlife agencies. *See* 36 C.F.R. §§ 219.19, 219.27(a)(6), 241.1–241.2. The Forest Service Manual provides for accomplishing the goal of maintaining viable populations of plants and wildlife "commensurate with public demand, multiple-use objectives and resource allocation" and maintaining a partnership with state fish and wildlife agencies in management of habitat. Forest Service Manual § 2603. The Forest Service has entered into a Memorandum of Understanding ("MOU") with the State of Utah which recognizes the Utah State Division of Wildlife Resources ("DWR") "as the agency responsible for management of fish and wildlife on National Forest lands...." MOU at ¶ A1. The MOU outlines a "cooperation ethic" stressing that the purpose of the agreement is to "strengthen the cooper-

ative approach" to management of fish and game and their habitat "at all levels" of the agencies in an attempt to achieve common goals. MOU at 1. Forest Service Regulations adopted to carry out the multiple-use mandate require the balancing of resources including, "[c]onsiderations of the relative value" of forest resources; management of forest lands as ecosystems with considerations of the interrelationship of plants, animals and other environmental factors; economic efficiency; coordination with other federal agencies and the states; protection of cultural resources; and "[p]rovision of the safe use and enjoyment of the forest resources by the public...." 36 C.F.R. § 219.1(b). The Forest Service Manual sets out a national forest objective to provide opportunities for nonurban recreation at sites developed and managed "consistent with the available natural resources to provide a safe, healthful, esthetic, nonurban atmosphere." Forest Service Manual § 2330.2. The relevant policies are to "provide recreation experiences toward the primitive end of the spectrum" and those "normally associated with a natural environment", with "the element of cost efficiency" to be considered with site management prioritizing public health and safety and protection of the natural environment, among other considerations. *Id.* § 2330.3.

In short, the court agrees with the United States that Forest Service decisions regarding the matters complained of by plaintiffs involving operation, management, control and supervision of the Flintlock Campground are grounded in diverse public policies and involve balancing of considerations of resource management and safety along with how best to handle safety concerns when absolute safety is not possible.

B. *United States Motion for Summary Judgment*

1. *Duty of United States to plaintiffs*

As an alternative position, the United States urges that it is entitled to summary judgment because it had no duty to plaintiffs.[5] The court, having concluded that

---

5. Plaintiffs claim that the United States had a duty to operate the campground and recreational

area in a reasonable manner and to warn those using the facilities of new, unusual and aggres-

plaintiffs' claims fall within the discretionary function exclusion, lacks subject matter jurisdiction and, therefore, does not reach the issue of what duty, if any, was owed plaintiffs by the United States.

### C. *The State's motion for summary judgment*

For purposes of the State, the Utah Supreme Court counsels that the issue of negligence be addressed before proceeding to the issue of sovereign immunity. *See Ferree v. State of Utah*, 784 P.2d 149, 152–153 (Utah 1989) ("Sovereign immunity ... is an affirmative defense and conceptually arises subsequent to the question of whether there is tort liability in the first instance. There is sound reason and desirable simplicity in analyzing and applying negligence concepts before deciding issues of sovereign immunity"); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993) ("the proper sequence of analysis is to determine, first, whether defendants had a duty ..., and second whether governmental immunity shields defendants from suit); cf. *de Villiers v. Utah County*, 882 P.2d 1161, 1164 (Utah App.1994) ("... if a plaintiff has not alleged a valid duty and breach of that duty, courts will typically decline to reach the issue of immunity.... However, if the issue of governmental immunity is clear, it is proper to begin the court's analysis there"), *cert. denied*, 890 P.2d 1034 (Utah 1995). Therefore, unlike the analysis applied to the United States's motion to dismiss, which first focused on the discretionary function exception, the court in this instance proceeds first with an analysis of plaintiffs' claims of negligence against the State.

### 1. *Negligence*

▆▆▆ The elements of a negligence claim under Utah law are duty, breach, causation, and injury or damages. *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). Whether a duty exists is a question of law to be determined by the court. *Id.* at 897. "Without a duty, there can be no negligence as a matter of law, and summary judgment is appropriate." *Rocky Mountain Thrift Store,*

*Inc. v. Salt Lake City Corp.* 887 P.2d 848, 852 (Utah 1994).

▆▆▆ The State contends that it cannot be held liable for negligence arising out of an attack by a wild animal because it owed plaintiffs no duty to protect them from wild animals, it breached no duty owed to plaintiffs and nothing it did, or failed to do, caused plaintiffs' injuries. Plaintiffs' concede that the State did not owe them a general duty to protect them from wild animals. However, plaintiffs' assert that the State, like the United States, was under a duty to warn those utilizing the facilities in the Strawberry Recreation Area of the dangers posed by the new, unusual and aggressive bear behavior. Plaintiffs contend that despite the lack of any statutory duty to those utilizing the Strawberry Recreation Area, the State of Utah, pursuant to the MOU, voluntarily assumed to assist the United States to provide a safe environment.

The MOU provision relied upon by plaintiffs provides as follows:

> A basic need of both agencies is to be kept informed on matters of mutual interest. This means the Division [DWR] should be informed in a timely manner and their recommendations solicited on matters of National Forest management that may affect fish and wildlife resources and their management; and the Forest Service should be informed in a timely manner and their recommendations solicited on fish and wildlife programs of the Division that affect the National Forest.

MOU ¶ 4. The MOU by its language does not support plaintiffs' position that the State assumed the obligation of assisting the United States in providing a safe environment to those using the Flintlock Campground such that a duty of care to plaintiffs was created. Plaintiffs rely on the Restatement (Second) of Torts, § 323 to support their position. However, section 323 requires that the defendant have undertaken "to render services" necessary to protect another person from harm.[6] *See* Comment a to § 323 ("[t]his

---

sive bear behavior. (Plaintiffs' Memorandum in Opposition p. 5).

**6.** Section 323 provides:

Section applies to any undertaking to render services to another which the defendant should recognize as necessary for the protection of the other person or things"). There is no evidence that the DWR undertook to render any specific service to plaintiffs or to other campers at the Forest Service's Flintlock Campground. The deposition evidence relied upon by plaintiffs suggests only that employees of the DWR and employees of the Forest Service communicate often regarding information of mutual interest. Presumably communication between those services would include information regarding any new and unusual dangers from bear activity. However, plaintiffs have pointed to no viable evidence which would support the conclusion that the State owed them, or other campers at Flintlock, a specific duty of care.

■■■■■ Even if such a duty on the part of the State could be construed under the MOU, pursuant to the public duty doctrine plaintiffs must show that the duty was owed to them. "Under the public duty doctrine, 'a duty to all is a duty to none.' . . . In other words, when the government deals generally with the welfare of all, it does so without a duty to anyone unless there is a 'special relationship' between the government and the individual." *Cannon v. University of Utah*, 866 P.2d 586, 588–89 (Utah App.1993) (citations omitted). The public duty doctrine provides:

> For a governmental agency and its agents to be liable for negligently caused injury suffered by a member of the public, the plaintiff must show a breach of a duty owed to him as an individual, not merely the breach of an obligation owed to the general public at large by the governmental official.

*Ferree v. State*, 784 P.2d 149, 151 (Utah 1989); *Lamarr v. Utah Dept. of Transportation*, 828 P.2d 535, 538–39 (Utah App.1992). "Thus, if the [State] owed no duty to [plaintiffs] apart from its duty to the general public, [plaintiffs] cannot recover." *Id.* at 539. "Duty is 'a question of whether the defendant is under any obligation for the benefit of a particular plaintiff. . . .' " *Ferree*, 784 P.2d at 151 (quoting W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 53, at 356–57 (5th ed.1984)). The State urges that, because it has not assumed responsibility for plaintiffs' safety or taken away their opportunity to protect themselves, no special relationship existed between plaintiffs and the State giving rise to a specific duty of care. *See Beach v. University of Utah*, 726 P.2d 413, 415 (Utah 1986) (a special relationship only arises "when one assumes responsibility for another's safety or deprives another of his or her normal opportunities for self-protection"). Plaintiffs contend that the State, by voluntarily undertaking to provide the United States with information regarding bear activity in the Strawberry Recreation Area, gave rise to a special relationship and, thus, a duty of care for those using the campground.

Prior to the bear attack, plaintiffs were undistinguishable members of the public. The State does not own the Flintlock Campground and did not make any representations of safety or protection to plaintiffs. Similarly, the State did not deprive plaintiffs of their normal opportunities for self-protection. Thus, the court concludes that no special relationship existed between the State and plaintiffs. The court also agrees with the State that, because the State had no knowledge or control of the bear when it entered Flintlock Campground and attacked Krystal, it could not have reasonably identified plaintiffs as likely to be harmed any more than the general public. Thus, under the public duty doctrine the State owed plaintiffs no duty of care.

■■■■■ Finally, even if the State had a duty to plaintiffs, the duty was breached only if there was some danger regarding bears to report and the DWR failed to communicate it

---

One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking.

to the Forest Service or to warn plaintiffs. The court, however, agrees with the State that the facts, as discussed previously in the context of the United States' motion to dismiss, do not support a conclusion that the DWR knew of any danger to plaintiffs from bears with respect to the Flintlock Campground.

### 2. *Discretionary function (Utah)*

■ As an additional basis for its ruling, the court concludes that the State is entitled to summary judgment based on the discretionary function exclusion. Pursuant to the Utah Governmental Immunity Act, Utah, like the United States, has waived immunity from suit for negligence of state employees "except if the injury arises out of . . .:(1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused". Utah Code Ann. § 63–30–10.[7]

■ The Utah Supreme Court applies a four-part test in determining if an act or omission is discretionary for purposes of the statute.

> To be purely discretionary, an act by the state must be affirmed under four preliminary questions:
>
> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?
>
> (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
>
> (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgement, and expertise on the

part of the governmental agency involved?

> (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and -duty to do or make the challenged act, omission, or decision?

*Little v. Utah State Div. of Family Servs.*, 667 P.2d 49, 51 (Utah 1983).

Applying the factors set forth in *Little* to the present case, the court concludes that DWR decisions relating to wildlife management, including which wildlife management issues affecting the national forests should be communicated to the Forest Service, are discretionary functions for which immunity has not been waived. The MOU provision which plaintiffs characterize as mandatory, and by which they contend that the State agreed it would provide prompt and accurate information to the United States concerning bear activity in the area, provides, as previously noted, as follows:

> A basic need of both agencies is to be kept informed on matters of mutual interest. This means the Division [DWR] should be informed in a timely manner and their recommendations solicited on matters of National Forest management that may affect fish and wildlife resources and their management; and the Forest Service should be informed in a timely manner and their recommendations solicited on fish and wildlife programs of the Division that affect the National Forests.

MOU at ¶ 4. The language of the MOU which "encourages" cooperation and information exchange, with meetings between agency personnel "as often as deemed advisable", MOU ¶ C.4, is clearly discretionary, leaving implementation of the cited goals to the judg-

---

7. "Despite the similarities in language between the state and federal discretionary function exceptions, the two provisions have been interpreted differently." *AIG Aviation Ins. Services, Inc. v. United States*, 885 F.Supp. 1496, 1503 (D.Utah 1995). That court noted the following comparison as an example of the difference in interpretation.

> Compare *Viacao Airlines*, 467 U.S. at 811–13, 104 S.Ct. at 2763–64 . . . (holding the nature of the conduct, rather than the level of implementation controls the inquiry; holding further

that employees at the operational level were immune from suit for policy-based discretionary decisions; and distinguishing *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 . . . (1955), which enunciated the discretionary/operational distinction), with *Little*, 667 P.2d at 51 (following *Indian Towing Co.*) ; *see also Duncan v. Union Pacific R.R.*, 842 P.2d 832, 835 (Utah 1992) (continuing to recognize and apply the discretionary/operational distinction).

*Id.* at 1503–1504 n. 7.

ment of the Forest Service and the DWR. Relevant statutes under which the DWR operates also reflect that wildlife decisions involve issues of policy and judgment. By statute, the DWR "[s]ubject to the broad policy making authority of the Wildlife Board, ... shall protect, propagate, manage, conserve, and distribute protected wildlife throughout the state." Utah Code Ann. § 23–14–1(2)(a). The Wildlife Board is to "establish the policies best designed to accomplish the purposes and fulfill the intent of all laws pertaining to wildlife and the preservation, protection, conservation, perpetuation, introduction, and management of wildlife." Utah Code Ann. § 23–14–3(2)(a). Among other things, the Wildlife Board, in establishing policy, is to consider "that wildlife and its habitat are an essential part of a healthy, productive environment" and "to balance the habitat requirements of wildlife with the social and economic activities of man" and to "seek to maintain wildlife on a sustainable basis." U.C.A. 23–14–3(2)(b).

In short, the States' management of wildlife and its interaction with the Forest Service on wildlife matters meet the four-step discretionary function test outlined in *Little.* First, the management of wildlife including the balancing of safety concerns, involves a government program. Similarly, cooperation with the Forest Service pursuant to the MOU involves governmental policies and objectives. Second, identification and evaluation of wildlife management safety issues and the protective steps, if any, to be taken are essential to the goals and policies of the State. Third, wildlife management decisions, including identification and evaluation of public safety matters, require the exercise of judgment and expertise. Fourth, the DWR has the lawful authority to make wildlife management decisions.

The court does not reach the other issues raised by the State.

## V. CONCLUSION

For the reasons stated, the motion to dismiss of the United States and the motion for summary judgment of the State of Utah are GRANTED.