49 F.Supp.2d 1155 (1998)
Anna KNOCHEL, by and through her parents and guardians ad litem, James and Lynn KNOCHEL, on their own behalf, Plaintiffs,
v.
UNITED STATES, Defendant.
No. CV 97-418 TUC JMR.
United States District Court, D. Arizona.
December 4, 1998.
*1156 Ted A. Schmidt, Kinerk, Beal, Schmidt & Dyer, P.C., Trial Lawyers, Tucson, AZ, for plaintiffs.
Frank W. Hunger, Assistant Attorney General, Janet Napolitano, United States Attorney, Paul F. Figley, Deputy Director, Steven B. Snyder, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant.

ORDER
ROLL, District Judge.
Following briefing and oral argument, the Court denied Defendant United States' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) based upon the discretionary function exception to the Federal Tort Claims Act (FTCA). 28 U.S.C. § 2680(a). In denying dismissal, the Court indicated that this detailed Order would follow.

BACKGROUND
On July 25, 1994, 16-year old Anna Knochel, while camping with a 4-H troop on Mt. Lemmon, was attacked by a black bear and severely mauled. Anna was camping at the Boy Scout Camp on Organization Ridge, which is located in the Santa Catalina District of the Coronado National Forest.
The United States Forest Service (USFS) delegates responsibility for wildlife management in the Coronado National Forest to the Arizona Game & Fish Commission (AG & F). In the late 1980s, Mt. Lemmon had been the site for the relocation of several "problem" bears. One of the factors in selecting Mt. Lemmon for bear relocation was the scarcity of black bears on the mountain during that time. The bear that attacked Anna Knochel bore a yellow tag marked # 166. Although the record is silent as to whether bear # 166 was one of the "problem" bears relocated to the mountain in the late 1980s or early 1990s, in the weeks leading up to the attack, campers and rangers had experienced repeated problems with bear # 166 in nearby camps. Just days before the attack, USFS personnel received a complaint about the bear's habituated behavior, including its lack of fear of people, from residents at the nearby Baptist Camp.
*1157 As a result of the attack, Anna sustained serious injuries to her head, neck and face, and right leg. She spent three weeks in the Intensive Care Unit at Tucson Medical Center, undergoing several surgeries to reattach her scalp and treat her leg wound. Due to the nature of her injuries, Anna was also transferred to St. Mary's Hospital for treatment in that hospital's burn unit.
Anna, through her parents, brought this action against the USFS for injuries she suffered from the July 25, 1994 attack. Plaintiffs filed their complaint on July 10, 1997. In lieu of an Answer, the United States moved to dismiss the action for lack of subject matter jurisdiction. The Court authorized limited discovery to allow Plaintiffs to develop facts in response to the motion to dismiss. Plaintiffs conducted extensive discovery over the next several months before filing their opposition. The government filed its reply and, upon agreement of the parties, Plaintiffs filed a surresponse.

Standard for Motion to Dismiss
The government's motion to dismiss based upon discretionary function constitutes a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). McCarthy v. United States, 850 F.2d 558, 560 (9th Cir.1988), cert. denied, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). In deciding a Rule 12(b)(1) motion to dismiss, the Court may review extrinsic evidence. Id. The Court must decide whether, accepting all allegations in the complaint as true, "the allegations state a claim sufficient to survive a motion to dismiss." United States v. Gaubert, 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 540, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)).

FTCA and the Discretionary Function Exception
The discretionary function exception precludes the imposition of liability against the United States for acts or failures to act
based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.
28 U.S.C. § 2680(a). In order to determine the applicability of the discretionary function exception, this Court applies the two-part test set forth in Berkovitz v. United States, 486 U.S. 531, 535, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the Court considers whether the action taken is a matter of choice or judgment for the acting employees. The discretionary function exception does not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. Id. Second, if the challenged conduct involves an element of judgment, the Court must determine whether that judgment is of the nature that the discretionary function was designed to protect. Id. at 536, 108 S.Ct. 1954. If the judgment is grounded in social, economic, or political policy, the discretionary function exception applies notwithstanding a showing of negligence. The government bears the ultimate burden of proving the applicability of the discretionary function exception. Prescott v. United States, 973 F.2d 696, 701-02 (9th Cir.1992).
The government asserts that the USFS has broad discretion to manage forest lands and to balance competing interests associated with wildlife, recreation, natural resources, and cultural and historical value. The government contends that it has satisfied both prongs of the Berkovitz test because 1) there are no federal guidelines or directives that require the USFS to protect campers from wild animals, and 2) the USFS's decisions regarding bear-human interaction involve the type of policymaking protected by the discretionary function exception. The government claims that the action should be dismissed for lack of subject matter jurisdiction.

*1158 Plaintiffs' Claims

Plaintiffs argue that under the first prong of Berkovitz, the USFS was required to 1) enforce rules and regulations regarding food and garbage handling, 2) inspect the Boy Scout Camp where Anna Knochel was attacked to detect violations of food and garbage regulations, 3) ensure that the Boy Scouts developed an operation and maintenance plan to comply with food and garbage regulations, and 4) notify AG & F when USFS employees received notice of an aggressive and dangerous bear in the area.
Plaintiffs also claim that the USFS did not engage in discretionary policy-making by failing to close campgrounds or to warn campers when the USFS had knowledge of the growing danger of aggressive and habituated bears.

A. Failure to enforce regulations regarding food and garbage handing

Plaintiffs claim that the USFS was required to enforce two directives regarding food and garbage handling. The directives allegedly consisted of 1) Forest Supervisor Jim Abbott's August 1989 "closure order," and 2) the Forest Service Manual.

1. Closure order
On August 12, 1989, Forest Supervisor Abbott issued a "closure order" for the Coronado National Forest which prohibited "possessing, storing, or discarding any food or refuse in an exposed or physically available condition to wildlife."
Plaintiffs claim that the closure order constituted a mandatory directive for all USFS employees working in the Coronado National Forest and that the USFS violated the closure order by failing to enforce regulations regarding food and garbage handling. Plaintiffs also allege that despite repeated warnings from wildlife biologists such as Deborah Bieber regarding the need for enforcement of the closure order, particularly in the Boy Scout Camp, Santa Catalina District Ranger Thomas Quinn instructed his employees not to issue citations for food and garbage violations unless campers abandoned their camp. Plaintiffs claim that while Ranger Quinn deliberately refused to enforce the closure order, other USFS personnel, including Forest Protection Officer Steve Hensel, were never informed of the closure order.
Plaintiffs also contend that Supervisor Abbott specifically ordered enforcement of the closure order in May 1993. Following a meeting between AG & F and USFS personnel, AG & F wrote Supervisor Abbott a letter regarding enforcement of the closure order. The letter stated that diligent enforcement of the order through warnings and written citations had proven highly successful in other USFS districts pursuing bear-proofing measures. The letter noted that in the those districts, the "human/bear conflicts showed a dramatic decline from the previous year." Supervisor Abbott handwrote on the AG & F letter the following statement: "RANGERS-due to [weather] patterns bears may be a continuing problem. Let's be sure all our [Law Enforcement Officers] are enforcing this. Jim". Abbott apparently then sent the letter with his notation to his district rangers.
Plaintiffs claim that Supervisor Abbott's handwritten note on the May 1993 AG & F letter constituted a mandatory directive to district rangers and USFS personnel to enforce the closure order.
The government contends that the closure order applied to the public at large and imposed no obligations on the USFS. According to the USFS, law enforcement officers had broad discretion in addressing a violation of food and garbage regulations, and there was no requirement that the USFS enforce violations of the closure order by issuing citations. The USFS claims that personnel often educated the public regarding the regulations in lieu of issuing citations.
Whether Supervisor Abbott's specific endorsement of the closure order constituted a binding directive on USFS personnel presents a question of fact. If the handwritten notation constituted a binding *1159 directive, USFS personnel were not free to disregard it. Although the government argues that it did in fact enforce the closure order through public education and lecturing, to what extent it did so and whether this action constituted USFS compliance with the directive are questions of fact not resolvable at this stage of the proceedings.

2. Forest Service Manual
Plaintiffs also contend that the USFS was required to enforce rules and regulations regarding food and garbage handling as set forth in the Forest Service Manual (FSM). Pursuant to § 5320.3 of the FSM: "Law enforcement personnel and Forest Protection Officers may use discretion when issuing a violation notice ... except for in the following circumstances: ... c) the safety or right of other users are in jeopardy." Plaintiffs claim that USFS personnel were on notice that failure to enforce the closure order endangered the safety of other users and, therefore, were obligated to issue citations for violations.
Whether USFS personnel were required to issue citations for food and garbage violations and whether failing to do so jeopardized the safety of other users are also questions of fact.

B. Failure to inspect and detect violations in the Boy Scout Camp

Plaintiffs claim that the USFS violated mandatory directives concerning inspection and detection of food and garbage violations at the Boy Scout Camp where Anna Knochel was attacked because 1) an FSM regulation required that special use permittees, including the Boy Scout Camp, be regularly inspected, and 2) a specific directive required that special inspections occur at the Boy Scout camp.

1. Regular inspections
Plaintiffs claim that USFS personnel were required to conduct regular inspections of organizational camps such as the Boy Scout Camp. FSM § 2343.1(7) requires organizational camps to comply with local sanitation codes and states in part that "District Rangers shall request the services of health officers to inspect organizational camps for compliance with acceptable standards." Plaintiffs also point to the testimony of Supervisor Abbott that he "believed" or "expected" regular inspections of special use permittees to occur.
Plaintiffs claim that the organization camps were not inspected prior to Anna Knochel's attack. According to Plaintiffs, regular inspections would have revealed gross violations of the closure order and a lack of bear-proofing.
The government argues that there was no rule or regulation which required the USFS to inspect camps in any particular manner or with any particular frequency. Rather than formal inspections, the government claims that it complied with its obligations under FSM § 2343.1(7) by actively notifying and educating camp permittees regarding food and garbage handling.
In any event, FSM regulations require inspections of permittee camps on some basis. Such regulations may qualify as mandatory directives under the first prong of Berkovitz.

2. Special inspection
Plaintiffs contend that not only was the USFS required to conduct regular inspections of the Boy Scout Camp, but that following a meeting in October 1995, a directive was issued to conduct a special inspection of the Boy Scout Camp.
On October 17, 1995, the USFS district management team held a meeting to discuss problems in bear management. Thereafter, Wildlife biologist Deborah Bieber prepared a memo regarding the meeting. In the memo, Bieber wrote: "Bill Lewis will make sure the organization camps are inspected for bear proofing [sic]."
Plaintiffs claim that the memo commemorated a direct order by the district management team to USFS personnel to conduct an immediate inspection of the Boy *1160 Scout Camp. The USFS concedes that such an inspection was never conducted, but that Ms. Bieber's memo was not a directive because Bieber conceded that she had no authority to command USFS personnel.
The Court finds that the Bieber memo did not constitute a binding directive on USFS personnel.

C. Failure to ensure that Boy Scouts implemented an operation and maintenance plan

Plaintiffs claim that the USFS was required to ensure that permittees such as the Boy Scouts implemented an operation and maintenance (O & M) plan.
Section 2341.4 of the FSM obligated the USFS to "[r]equire holders providing facilities or services to the general public to prepare an Operating Plan for Forest Service approval" and to "[e]nsure that Operating Plan[] contain[s] sufficient detail and standards to enable the Forest Service permit administrators to monitor operations for compliance."
In addition to the above requirements, an April 1993 supplement to the FSM known as "the Bear Clause" mandated O & M plans for certain operations. The supplement required the inclusion of specific bear-proofing requirements regarding the feeding of bears and the handling and storage of food and garbage.
Plaintiffs also indicate that in October 1995, wildlife biologist Bieber informed District Ranger Quinn that "[a]ll permittees in bear country need to have ['the Bear Clause'] in their operation and maintenance plans. This has not been done to date." (emphasis supplied). Despite this warning, the Boy Scout Camp submitted no O & M plan prior to the attack on Anna Knochel.
The government argues that the O & M regulations were directives aimed at permittees and not USFS personnel. The USFS claims that it fulfilled its obligations with respect to the O & M regulations when it notified permittees of their obligation to submit O & M plans and sent the "Bear Clause" supplement to permittees for inclusion in the plans.
The FSM regulations required the USFS to "ensure" that permittees submit O & M plans. The "Bear Clause" supplement required that certain operations such as the Boy Scout Camp implement specific bear-proofing measures. In fact, the "Bear Clause" supplement was enacted as a result of the USFS' awareness of the escalating bear problem on Mt. Lemmon. Both the FSM regulations and the "Bear Clause" supplement may constitute mandatory directives under the first prong of Berkovitz.
Although the government argues that Gadd v. United States, 971 F.Supp. 502 (D.Utah 1997) and Childers v. United States, 40 F.3d 973 (9th Cir.1994), cert. denied, 514 U.S. 1095, 115 S.Ct. 1821, 131 L.Ed.2d 744 (1995) support dismissal of this action, neither is persuasive. Gadd is a recent Utah district court decision ruling that the discretionary function exception to the FTCA barred suit by a child attacked by a black bear while camping in a Forest Service campground. Unlike the instant case, however, Gadd involved a campground with no history of problem bears or human-bear interaction. There, the court found that the danger of a bear attack under ordinary circumstances was improbable, much less a "known natural hazard" requiring the USFS to post warnings. 971 F.Supp. at 508. In addition, issues involving clean-up directives were not present.
In Childers, the Ninth Circuit affirmed the dismissal of a suit brought by the family of a boy who slipped from a platform and fell to his death at Yellowstone National Park. There the Ninth Circuit ruled that decisions concerning how to make public areas safe for visitors and whether to issue warnings, including types of warnings, were protected policy decisions under the discretionary function exception. Importantly, however, in Childers, no regulations or guidelines required the National Park Service to place warnings *1161 in any particular area. 40 F.3d at 976.
The Ninth Circuit's decision in Faber v. United States, 56 F.3d 1122 (9th Cir.1995), however, is instructive. Faber involved a negligence action brought by a man who was rendered a quadriplegic when he dove from a rock ledge into a pool at the Tanque Verde Falls, also located in the Coronado National Forest. There, the Ninth Circuit held that the discretionary function exception did not apply where the USFS failed to follow regulations concerning placement of warning signs when the USFS had specifically prescribed policy to address diving accidents.
Here, the USFS identified a human-bear problem on Mt. Lemmon and specifically prescribed policy to address human-bear interaction. Accordingly, the discretionary function exception does not apply to the above claims except to the extent that Plaintiffs' claims are based upon the assertion that the Bieber memo was a binding directive. With respect to Plaintiff's last two claims, discussed below, the Court finds these claims based on protected decisions under the discretionary function exception.

D. Failure of USFS to notify AG & F when USFS received notice of an aggressive bear in the area

As previously discussed, the USFS delegates responsibility for wildlife management in the Coronado National Forest to the Arizona Game and Fish Commission. Plaintiffs claim that when the USFS received notice that an aggressive and habituated bear was in the area, the USFS had a nondiscretionary duty to either 1) call AG & F, or 2) instruct a caller to notify AG & F.
Plaintiffs present evidence that a week before the attack on Anna, on July 18, 1996, bear # 166 invaded the nearby Baptist Camp three times, and that before the third invasion, the camp manager called the ranger station to report its aggressiveness. Plaintiffs allege that a few days before the attack, the same bear again entered the Baptist Camp and broke off a freezer lid and scattered trash.[1]
Plaintiffs also claim that Supervisor Abbott and District Ranger Quinn both testified that they would expect USFS personnel to respond to a call regarding an aggressive animal by notifying AG & F.
The government claims that there was no mandatory directive requiring USFS personnel to notify AG & F after receiving a call regarding a dangerous bear. Rather, the government argues that the USFS must weigh various policy considerations at the heart of the discretionary function, including intergovernmental relations, before determining what action is appropriate. The government also contends that Supervisor Abbott's and District Ranger Quinn's "expectations" regarding what personnel should do in such a situation did not qualify as mandatory directives.
Plaintiffs fail to identify any regulation requiring the USFS to call AG & F when notified of a dangerous animal. The USFS' assessment, prioritization, and determination of an appropriate response to any given call involves balancing a number of factors and policy considerations. Even assuming the AG & F's subsequent action in removing the bear was an insufficient intervening response, the discretionary function protected the USFS' determinations in these circumstances. The government's motion to dismiss is granted with respect to this claim.

V. Failure to close the campgrounds or to warn campers regarding the dangers of a bear attack

Plaintiffs claim that the USFS did not engage in protected policy-making when it failed to close the campgrounds or to adequately warn campers after learning of the escalating danger of a bear attack.
*1162 Plaintiffs detail several incidents where aggressive bears raided camps and where camp personnel notified USFS employees of the problems. In addition, some USFS personnel, including Bieber, notified supervisors of a "bear problem" and specifically requested stricter enforcement of food and garbage handling regulations. Plaintiffs claim that because the USFS took no action in response to these matters, there is no protected policy decision.
In response, the government argues that there was no directive requiring the USFS to close the campgrounds or to warn campers of aggressive bears. The government claims that in balancing the needs of wildlife and approximately three million visitors a year in the Coronado National Forest, decisions to close campgrounds or to warn campers are policy decisions protected by the discretionary function exception.
Again, Plaintiffs fail to identify any rules or regulations requiring the USFS to warn campers or to close campgrounds under the circumstances presented here. Absent such mandatory directives, the USFS' decision whether to close campgrounds or to warn campers of dangers associated with the forest was a policy decision protected by the discretionary function exception. The government's motion to dismiss is granted with respect to this claim.

CONCLUSION
Although the USFS exercises discretion and engages in policy-making with respect to a number of issues regarding forest management, there are regulations in place regarding food and garbage handling, operation and management plans, and permittee inspections. The record before the Court at this time indicates that these regulations may qualify as mandatory directives under the first prong of Berkovitz.
Because the government has failed to demonstrate that the discretionary function exception applies, and because USFS personnel were aware of an escalating bear problem and high-level USFS management specifically prescribed "bear-proofing" measures, IT IS HEREBY ORDERED that the motion to dismiss for lack of subject matter jurisdiction is DENIED except as to Plaintiff's claims that the Bieber memo was a mandatory directive, and that the USFS was required to a) notify AG & F of a dangerous animal in the area, or b) warn campers or close the campgrounds due to the increase in human-bear interaction.
NOTES
[1] At some point after the freezer incident but before the attack on Anna Knochel, Cadie Pruss of the Arizona Game & Fish Commission used a dart to sedate the bear and moved it nine miles down the mountain.